CONNECTICUT LIGHT AND POWER COMPANY ET AL. *v.* PUBLIC UTILITIES CONTROL AUTHORITY ET AL.

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE NO. 143947

Memorandum filed December 5, 1977

*Day, Berry & Howard,* for the plaintiffs.

*Carl R. Ajello,* attorney general, and *Robert S. Golden, Jr.,* and *William B. Gundling,* assistant attorneys general, for the named defendant.

*Robert M. Sussler,* for the defendants city of Hartford and town of East Lyme.

*Alexander A. Goldfarb,* for the defendant Connecticut Citizen Action Group.

*Barry S. Zitser,* for the defendant Office of Consumer Counsel.

COVELLO, J. This is an appeal from a rate determination made by the public utilities control authority. On May 20, 1977, the Connecticut Light and Power Company and the Hartford Electric Light Company each filed proposed amendments to their existing electric and gas rate schedules seeking authority to charge rates estimated to generate combined additional revenues of $90,036,000. On October 25, 1977, the authority issued its decisions authorizing the utilities to file schedules which would produce combined additional revenues of $35,033,000. From those decisions the companies filed the present appeal on November 3, 1977.

On November 7, 1977, the companies filed rate schedules designed to implement the $35,033,000 rate increase. Following correction of those schedules on November 22, 1977, the authority, on November 23, 1977, approved the revised schedules of rates and authorized the plaintiffs to begin charging the new rates as of November 28, 1977.

As an incident to the present appeal, the utility companies now move pursuant to § 4-183 (c) of the General Statutes for a stay during the pendency of the appeal of so much of the public utilities control authority's decision as "prevent[s] the Companies from charging rates to obtain the full increase of $90 million of revenues provided for in their rate schedule amendments filed with the authority on May 20, 1977 . . . ." A proper determination of this application mandates a review of recent legislative history concerning utility rate making.

As public service companies, the utilities here are subject to regulation under the provisions of title 16 of the General Statutes. Prior to December 1, 1975, § 16-19 thereof authorized the promulgation of an amended rate by simply filing a new schedule. Thereafter, the new rates could be suspended or modified at the option of the then public utilities commission. With reference to that earlier procedure, the Supreme Court observed: "Our law, unlike the public utility laws in many jurisdictions, does not in general condition the establishment of a changed rate schedule by a utility company upon prior approval by the commission. All a company desiring to put into effect a changed rate schedule needs to do in the first instance is to file it with the commission. There is no obligation upon the company to apply to the commission for an order that the effective date of the schedule shall not be suspended, or upon the commission to make an order directing whether or not it shall be suspended, but,

unless in the exercise of the power vested in it, expressly made discretionary, it does so order, the schedule becomes effective at the time fixed in it." *New Haven* v. *New Haven Water Co.*, 132 Conn. 496, 509-10.

Under the earlier appellate procedure, the appeal to a court from a public utilities commission order suspending or modifying the company-initiated amendment of rates operated, pursuant to § 16-39, as an automatic stay or supersedeas of the commission order being appealed. That, in turn, would result in the new rate spontaneously going into effect unless a court, pursuant to § 16-39, ordered otherwise. That self-initiating rate-making procedure and the automatic stay provisions of § 16-39 enabled the courts on several occasions to breathe temporary life into rate amendments which had been only partially ratified by subsequent order of the commission.

Public Acts 1975, No. 75-486, however, significantly altered the legislative fabric of the rate-making process. A revised § 16-19, which became effective December 1, 1975, now provides that "[n]o public service company may charge rates in excess of those previously approved by the authority . . . ." A temporary rate amendment is authorized in the event that the authority does not make a finding on a rate application within 150 days. With this exception, which is inapplicable to the present case, a proposed amendment to a rate schedule becomes nothing more unless and until the authority approves it. Therefore, even with the automatic stay provisions of § 16-39, there is now nothing, with the exception of the 150-day rule, which can bear the legislative credential of being a rate unless the authority designates and approves it as such.

Public Acts 1977, No. 77-603, effective July 1, 1977, established a uniform procedure for the pros-

ecution of all administrative appeals. As a result, § 16-39, which provided for the automatic stay of commission orders upon appeal, was itself repealed and all stay proceedings became subject to § 4-183 which succinctly provides: "(c) The filing of the petition [of appeal] does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms."

A "stay," in law, is the postponement of an action or proceeding. The decision sought to be stayed here is not the authorization of the $35,033,000 increase but the inferential rejection of the $55,003,000 balance of the original $90,036,000 request. Even if this were an "agency decision" within the meaning of § 4-183 (c), the postponement of that determination would not, as a matter of law, bring forward the original request as an authorized rate for, unlike what would have happened under the prior statute, the rate proposal would simply continue as a proposal until approved by the authority under § 16-19 or until the agency action was reversed or modified as an incident to a final judgment on appeal under § 4-183 (g).

The utilities argue that even if it does not have a legal basis under § 4-183 (c) the court has an equitable power to grant the requested interim rate increase during the pendency of the appeal. Even if this is so the implementation of the full $90,036,000 increase at this preliminary stage in the proceedings would annul what is obviously a very deliberate change in the intricate rate-making machinery prescribed by the legislature and would completely abrogate, without even preliminary review, the lengthy administrative process conducted by the authority. Against the background of a $35,033,000 increase which has already been

implemented and an expedited judicial process which will accelerate this appeal, the court would not be disposed to exercise such an equitable power.

Accordingly, the motion for a partial stay of the authority's decision is denied and the objections thereto are sustained.